UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

MARK A. STOLZENBURG, individually )
and on behalf of a class of similarly )
situated individuals, )
                                                 )
          Plaintiff, )
                                                   )
v. )   No. 4:14-CV-1533 RLW
                                                   )
BIEWER LUMBER, LLC, et al., )
                                                   )
          Defendant. )

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant Green Composites, L.L.C.'s Motion to Dismiss Pursuant to F.R.C.P. 12(B)(6) (ECF No. 52) and Defendant Biewer Lumber, LLC's Motion to Dismiss Pursuant to F.R.C.P. 12(B)(2) and 12(B)(6) (ECF No. 54).

## BACKGROUND

Plaintiff is a resident of Missouri. Plaintiff alleges he purchased the Monarch Decking at issue in 2005. The decking was accompanied by a 20 year Monarch Limited Warranty.[1] Defendants argue that Plaintiff became aware of issues and alleged defects in the Monarch Decking in 2007. Plaintiff filed this Complaint in September 2014. Plaintiff alleges claims under the Magnuson-Moss Warranty Act (Count I), Breach of Express Warranty and Violations of Article 2 of the Uniform Commercial Code (Count II), Breach of the Implied Warranty of Merchantability (Count III), and violations of the Missouri Merchandising Practices Act ("MMPA").

---

[1] Biewer attached the alleged warranty to its Memorandum in Support of its Motion to Dismiss. Plaintiff claims that Biewer's warranty is not the one provided to him and attaches the allegedly applicable warranty to his response. *See* ECF No. 70-1.

## LEGAL STANDARD

In ruling on a motion to dismiss or a motion for judgment on the pleadings, the Court must view the allegations in the complaint liberally in the light most favorable to Plaintiff. *Eckert v. Titan Tire Corp.*, 514 F.3d 801, 806 (8th Cir. 2008) (citing *Luney v. SGS Auto Servs.*, 432 F.3d 866, 867 (8th Cir. 2005)). Additionally, the Court "must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party." *Coons v. Mineta*, 410 F.3d 1036, 1039 (8th Cir. 2005) (citation omitted). To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (abrogating the "no set of facts" standard for Fed. R. Civ. P. 12(b)(6) found in *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957)). While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; *Huang v. Gateway Hotel Holdings*, 520 F. Supp. 2d 1137, 1140 (E.D. Mo. 2007).

## DISCUSSION

### A. Green Tree Composites, L.L.C.

Green Tree Composites, L.L.C. ("Green Tree") raises three arguments in its Motion to Dismiss (ECF No. 52): (1) Stolzenburg's complaint should be dismissed because all claims are barred by the applicable statute of limitations, (2) Count III, alleging breach of an implied warranty, should be dismissed for failure to state a claim, and (3) the complaint, particularly the

MMPA claim, should be dismissed for failure to comply with the heightened pleadings standards in Fed. R. Civ. P. 9(b).[2]

### 1. Statute of Limitations

Green Tree contends that a four-year limitations period applies to Count I (violation of the Magnuson-Moss Warranty Act ("MMWA"), Count II (breach of express warranty), and Count III (breach of implied warranty of merchantability). Green Tree states that a five-year limitations period applies to Count IV for violation of the MMPA. Plaintiff does not dispute the relevant limitations periods. However, the parties dispute when Plaintiff's alleged causes of action accrued.

In the Complaint, Plaintiff alleges that he purchased Monarch Decking manufactured by Defendants to build a deck at his home on or about October 10, 2005. (Complaint, ECF No. 1, ¶9). Plaintiff further alleges:

> Within two years of installation, Stozenburg [sic] noticed that large black spots began developing on the decking. He notified Defendants of this issue and was advised by Defendants to treat the same with a Clorox-based solution. When that did not work, Stolzenburg contacted Defendants again to notify it of the continuing discoloration. An employee or agent of Defendants suggested additional sealing and cleaning. Stolzenburg closely followed these instructions, yet between 2007 and 2013 the decking continued to become discolored, develop mold, split, crack and warp. Finally, in 2013, the issues had become so problematic and apparent, that Stolzenburg finally demanded either a refund or replacement of the product. In response, Defendants declined to honor Stolzenburg's warranty. The only explanation provided to Stolzenburg by Defendants…for their refusal to honor his warranty, was that Green Tree was no longer in business. …

(Complaint, ¶11).

---

[2] Green Tree and Biewer both make these three same arguments and they are addressed together in this section.

In response, Plaintiff does not dispute that the four and five year limitations periods apply to the various counts, but Plaintiff disputes Green Tree's contention that the causes of actions accrued and the limitations periods began running in 2007. Rather, Plaintiff contends that the causes of action accrued and the statute of limitations began running in 2013. Plaintiff contends that Green Tree warranted future performance of the decking materials, and those warranties explicitly extended to the future performance of the goods for periods of ten and twenty years. (ECF No. 70 at 3-4 (citing *R.W. Murray v. Shatterproof Glass Corp.*, 697 F.2d 818, 823 (8th Cir. 1983) (citing *Standard Alliance Industries, Inc. v. Black Clawson Co.*, 587 F.2d 813, 820–21 (6th Cir.1978) ("in order to constitute a warranty of future performance under section 400.2–725(2), the terms of the warranty must unambiguously indicate that the manufacturer is warranting the future performance of the goods for a specified period of time"); *Ouellette Machinery Systems, Inc. v. Clinton Lindberg Cadillac Co.*, 60 S.W. 3d 618, 621 (Mo. Ct. App. 2001).("To constitute a warranty for future performance, the terms of the warranty must unambiguously indicate the manufacturer is warranting the future performance of the goods for a specified period of time."). Plaintiff contends that Green Tree explicitly extended the warranty to a warranty for future performance. Plaintiff further argues that the MMPA claim, which alleges breach of a service warranty, accrues on the date when the defendant first clearly refuses to honor the warranty. (ECF No. 70 at 5 (citing *Schuchmann v. Air Servs. Heating & Air Conditioning, Inc.*, 199 S.W.3d 228, 238 (Mo. Ct. App. 2006) ("The harm here occurred … when Defendant flatly refused to honor the lifetime warranty either then or in the future."). Therefore, Plaintiff asserts that no cause of action under the MMPA began to accrue until Green Tree refused to honor its warranty in 2013. (ECF No. 70 at 5).

Further, in response to Green Tree's arguments, Plaintiff contends that the accrual of causes of action for breach of express warranty, implied warranty and MMWA did not begin to accrue in 2007 simply because that was the first date that Plaintiff noticed any symptoms. (ECF No. 70 at 6-7 (citing *Linn Reorganized Sch. Dist. No. 2 of Osage Cty. v. Butler Mfg. Co.*, 672 S.W.2d 340, 342-43 (Mo. 1984) ("What § 516.100 and § 516.120 require for the commencement of the running of the statute is that the resulting damage '*is capable of ascertainment.*'"); *Verbrugge v. ABC Seamless Steel Siding, Inc.*, 157 S.W.3d 298, 302 (Mo. Ct. App. 2005). Plaintiff argues that "[i]n the absence of unassailable proof that a defendant could be found to have defaulted on its contractual obligations, damages are not ascertainable." (ECF No. 70 at 7 (citing *Ballwin Plaza Corp. v. H. B. Deal Const. Co.*, 462 S.W.2d 687, 690 (Mo. 1971)). Plaintiff relies on *Highway Sales, Inc. v. Blue Bird Corp.*, 559 F.3d 782 (8th Cir. 2009) where the Eighth Circuit held that the plaintiff's letter to defendant in 2004 outlining all of the RV's defects and demanding a refund of the purchase price did not trigger the statute of limitations. *Id.* at 788. The Eighth Circuit held that the "district court erred by concluding as a matter of law that Oren believed the RV was *beyond repair* as of that date." *Id.* at 788. Rather, the Eighth Circuit held that a "genuine issue of material fact exists regarding the date Oren knew or should have known Blue Bird was unable to maintain the RV as warranted." *Id.* at 788. Plaintiff maintains that there is no contention that Stolzenburg claimed his deck was beyond repair or needed to be replaced prior to 2013. (ECF No. 70 at 8). Plaintiff states that the only events occurring prior to 2013 were Stolzenburg's observation of spotting on the decking, notification to Green Tree of the same, and Stolzenburg's following Green Tree's instructions on how to attempt to remedy the spotting. (ECF No. 70 at 8).

Green Tree argues that Plaintiff's Complaint alleges that he became aware of problems with the Monarch Decking within 2 years of purchasing the decking, or in 2007. (ECF No. 53 (citing Complaint, ¶11). Green Tree claims that Plaintiff's claims were all "capable of ascertainment" in 2007 and, therefore, Plaintiff's claims are now time-barred. Green Tree relies on several Missouri Court of Appeals decisions to support its position: *Ashford Condo., Inc. v. Horner & Shifrin, Inc.*, 328 S.W.3d 714, 721 (Mo. Ct. App. 2010) (plaintiff knew that the flashing was improperly installed at the time of construction in 2000 and its claim was time-barred); *O'Reilly v. Dock*, 929 S.W.2d 297, 302 (Mo. Ct. App. 1996) ("Plaintiffs knew for more than five years before they filed suit that there was damage being caused by window leaks, although they did not know the extent of the damage. Thus, while they were not aware of the precise amount of damage, they were aware of the fact of damage, which means that the damage they suffered was capable of ascertainment within the meaning of § 516.100.1."); *Arst v. Max Barken, Inc.*, 655 S.W.2d 845, 848 (Mo. Ct. App. 1983) (claim barred by statute of limitations where the Arsts "discovered cracks and shifting of their foundation in August of 1969 and they knew who caused such damage, yet they neglected to employ an expert to ascertain the nature of their damages until August of 1979"); *Lato v. Concord Homes, Inc.*, 659 S.W.2d 593, 594 (Mo. Ct. App. 1983) (claims for breach of express warranty, negligent design, breach of implied warranty, and strict liability failed where plaintiffs were aware of a "stopped up lateral sanitary sewer line which was constructed with an inadequate pitch or degree of fall" more than five years prior to filing suit); *Ball v. Friese Const. Co.*, 348 S.W.3d 172, 177 (Mo. Ct. App. 2011) (denying claims for breach of the implied warranty of habitability, fraud and violations of the Missouri Merchandising Practices Act related to the construction of a house where the

homeowner "could have discovered the cause of the damages earlier, yet chose not to take the steps necessary to do so").

Green Tree argues that Plaintiff's claims should be dismissed as time-barred. Plaintiff's Complaint states that he noticed large black spots on the decking within around 2007. Plaintiff further alleged that he contacted one of the defendants who advised him to treat the decking with a Clorox-based solution. "When that did not work, Stolzenburg contacted Defendants again to notify it of the continuing discoloration. An employee or agent of Defendants suggested additional sealing and cleaning. Stolzenburg closely followed these instructions, yet between 2007 and 2013, the decking continued to become discolored, develop mold, split, crack and warp." (ECF No. 53 at 10-11 (citing Complaint, ¶11).

The Missouri Supreme Court has interpreted Section 516.100's capable of ascertainment standard to be an objective standard and has held that "*the statute of limitations begins to run when the 'evidence was such to place a reasonably prudent person on notice of a potentially actionable injury.*'" *Powel v. Chaminade College Preparatory, Inc.,* 197 S.W.3d 576, 582 (Mo. banc 2006) (quoting *Bus. Men's Assur. Co. of Am. v. Graham*, 984 S.W.2d 501, 507 (Mo. 1999) (emphasis in original). The test to be applied is "when a reasonable person would have been put on notice that an injury and substantial damages may have occurred and would have undertaken to ascertain the extent of the damages." *State ex rel. Marianist Province of the United States v. Ross,* 258 S.W.3d 809, 811 (Mo. banc 2008) (citation omitted). Thus, "[i]n order for the statute [of limitations] to accrue, plaintiff must have knowledge of the wrong and at least nominal damage, or [knowledge] of something that puts plaintiff on notice to inquire further." *Gaydos v. Imhoff,* 245 S.W.3d 303, 307 (Mo. Ct. App. 2008).

The Missouri Supreme Court has also explained that the phrase "capable of ascertainment" refers to "the fact of damage, rather than to the exact amount of damage." *Graham*, 984 S.W.2d at 507; *Klemme v. Best*, 941 S.W.2d 493, 497 (Mo. banc 1997) ("All possible damages do not have to be known, or even knowable, before the statute accrues."); *Dixon v. Shafton*, 649 S.W.2d 435, 438 (Mo. banc 1983) ("The word 'ascertain' has always been read as referring to the fact of damage, rather than to the precise amount."). Thus, "[d]amages are ascertained when the fact of damage appears, not when the extent or amount of damage is determined." *Kennedy v. Microsurgery & Brain Research Inst.*, 18 S.W.3d 39, 42 (Mo. Ct. App. 2000). "When the *fact of damage* becomes capable of ascertainment, the statute of limitations is put in motion." *Kuehnle*, 92 S.W.3d at 139 (emphasis in original) (citation omitted).

The Court holds that an issue of fact exists regarding when Plaintiff's cause of action began to accrue. Plaintiff alleges in his Complaint that he was aware that something was wrong with the decking in 2007. Plaintiff contacted Defendants in 2007 to let them know of his observations of the decking. Plaintiff alleges that Defendants told Plaintiff to use a treatment process to treat the issues to the decking. Plaintiff states that he utilized this treatment on the decking from 2007 through 2013, when he filed this lawsuit. As noted by Plaintiff, Defendants did not disclaim their warranty in 2007. Although Plaintiff clearly was aware that the decking had some discoloration, Plaintiff alleges that Defendants' assurances prevented him from ascertaining his injury. At this stage of the litigation, the Court cannot determine whether Plaintiff was aware that he was damaged based upon the assurances provided by Defendants regarding the decking. The Court holds that an issue of fact exists regarding whether Plaintiff was prevented from ascertaining the damage to his decking based upon the representations by Defendants. *Linn Reorganized Sch. Dist. No. 2 of Osage Cty. v. Butler Mfg. Co.*, 672 S.W.2d

340, 343 (Mo. 1984) (quoting *Davis v. Laclede Gas Co.,* 603 S.W.2d 554, 556 (Mo. banc 1980) (Missouri's 'capable of ascertainment' language represents a statutory recognition 'that the "cause of action" which commences the limitations period should not refer to the "technical" breach of duty which determines whether the plaintiff has any legal right, but to the existence of a practical remedy.'). Further, the Court distinguishes the cases relied upon by Defendants to support their claim that their purported silence does not toll this action. In both *Owen v. Gen. Motors Corp.*, 533 F.3d 913 (8th Cir. 2008) and *Pollard v. Remington Arms Co., LLC*, No. 13-0086-CV-W-ODS, 2013 WL 3039797 (W.D. Mo. June 17, 2013), the defendants did not make any affirmative statements to the plaintiffs. In contrast, Defendants in this case affirmatively gave Plaintiff a course of action that was supposed to remediate the problem with his decking. Defendants did not respond with mere silence. In turn, Plaintiff alleges that he relied upon these affirmative statements and did not file suit for several years. The Court holds that Defendants' assurances could have had the practical effect of prohibiting Plaintiff from making "a practical determination of the extent of damages" to his decking. *Verbrugge v. ABC Seamless Steel Siding, Inc.*, 157 S.W.3d 298, 303 (Mo. Ct. App. 2005). Therefore, the Court denies Defendants' Motion to Dismiss based upon statute of limitations grounds.

### 2. Failure to State a Claim

Defendants contend that the warranty issued to Stolzenburg disclaims all implied warranties. The Limited Warranty is identified as "The Exotics Decking by Monarch Limited Warranty." The next sentence states, "There are no warranties which extend beyond the face of this limited warranty." The third paragraph provides:

> Purchaser's sole remedies for any claim whatsoever, whether in contract, warranty, tort or strict liability, arising out of the use, installation storage or possession of Exotics Decking by Monarch products. Including without limitation any claim that Exotics Decking by Monarch products failed to perform

as warranted, shall be for replacement by the Manufacturer with substitute Exotics Decking by Monarch product.

The next sentence provides, "Manufacturer's sole liability under this warranty is limited solely to the replacement of defective product." (ECF No. 53 at 18). The seventh paragraph states:

> The foregoing warranty is exclusive and in lieu of any and all other warranties with respect to Exotics Decking by Monarch products, express or implied, including without limitation, any implied warranty of merchantability or fitness for a particular purpose which, to the fullest extent allowed by law, are waived and disclaimed.

The next statement provides that "[i]n order to be eligible for this Limited Warranty, you must complete and submit the warranty card to Green Tree Composites within 30 days of purchase."

Defendants claim that warranty at issue disclaims all implied warranties. (ECF No. 53 at 19-20). Defendants assert that the Limited Warranty in this case is one-page long and single-sided. (ECF No. 53 at 21). As a result, Defendants maintain that "everything in the Limited Warranty is conspicuous, and is such that a reasonable person would have or should have read it." (ECF No. 53 at 21). Defendants argue that the limited warranty does not extend beyond the guarantees given in the document. Defendants assert that, under both Michigan and Missouri law, they have disclaimed all warranties. *See* Mo. Rev. Stat. §400.2-316. Defendants argue that the Limited Warranty is described as a limited warranty and clearly indicates that there "are no warranties which extend beyond the face of the limited warranty." (ECF No. 53 at 22). Therefore, Defendants argue that it is clear that no warranties are implied beyond the face of the limited warranty.

In response, Plaintiff contends that even if Green Tree disclaimed all the implied warranties, Green Tree's failure to remedy its defective product invalidated the disclaimer under Missouri law. (ECF No. 70 at 8-9). Plaintiff notes that, unless excluded or modified under Section 400.2-416, a warranty that the goods shall be merchantable is implied in a contract for

their sale if the seller is a merchant with respect to goods of that kind. Mo. Rev. Stat. 400.2-314(1). In order for goods to be merchantable, they must be fit for the ordinary purposes for which such goods are used. Further, Plaintiff points out that in order to exclude or modify the implied warranty of merchantability, the language must mention merchantability and be conspicuous. (ECF No. 70 at 9 (citing Mo. Rev. Stat. 400.2-316). Plaintiff admits that the warranty issued to Plaintiff mentions the implied "merchantability" warranty but states that Green Tree refused to honor its express warranty. (ECF No. 70 at 9 (citing *Givan v. Mack Truck, Inc.*, 569 S.W.2d 243, 247 (Mo. Ct. App. 1978)). Plaintiff asserts that Green Tree has issued an express warranty to its customers, included a disclaimer of all implied warranties, refused to honor the express warranty, and then argued that it was protected by the language contained within the express warranty. (ECF No. 70 at 9-10). Plaintiff asserts that, even if Green Tree properly disclaimed the implied warranty of merchantability, then Green Tree remains liable based upon the express warranty.

The Court holds that the Limited Warranty clearly disclaims all of the implied warranties other than the express warranty. In fact, Plaintiff admits that the warranty purports to disclaim the implied warranty of merchantability and argues only that this waiver does not impact the express warranty. The warranty identifies the implied warranty of merchantability and disclaims that warranty in clear, unambiguous terms, which complies with the legal requirements for such a waiver. *See* ECF No. 70-1. Therefore, the Court dismisses Plaintiff's Claim for breach of the implied warranty of merchantability.

### 3. Heightened Pleading Standards

Defendants contend that Plaintiff is subject to a heightened pleading standard relating to the Plaintiff's fraud allegations, the MMPA claim, or the alter ego allegations. Biewer also

argues that Stolzenburg failed to meet a heightened pleading standard related to an alter ego theory of liability. Defendants argue that Plaintiff has not identified any misrepresentations by Green Tree to Plaintiff. Defendants also note that Plaintiff has not identified any individuals from Green Tree who communicated with Plaintiff. (ECF No. 53 at 24-25). With respect to the alter ego claim, Defendants assert that Plaintiff's Complaint lists legal conclusions as to the alter ego theory but does not meet the heightened pleading standard. (ECF No. 53 at 24).

Plaintiff contends that he meets the heightened pleading standard for an MMPA claim by averring specific factual events, including the specific terms of the warranty, the date when he purchased the decking, a summary of the timeline when he first noticed a defect, the actions he took when discovering the defect, Green Tree's response to the notification of defects, and the ways in which he contends that Defendants' actions violate the MMPA. (ECF No. 70 at 10-11). Plaintiff claims that because the MMPA supplements the definition of common law fraud, it eliminates the need to prove both reliance and an intent to defraud. (ECF No. 70 at 12).

Plaintiff also claims that he has pleaded sufficient facts to satisfy each element of the test to pierce the corporate veil. (ECF No. 70 at 12-13) (citing *Radaszewski by Radaszewski v. Telecom Corp.*, 981 F.2d 305, 306 (8th Cir. 1992) (To pierce the corporate veil, one must show (1) control, (2) used to commit a fraud or wrong, (3) which caused the injury or wrong complained of.). Plaintiff contends that the fraud element of the test can be established by demonstrating a wrong, violation of a statutory or other positive legal duty, or a dishonest and unjust act. (ECF No. 70 at 13). Plaintiff alleges the uniform course of conduct between Green Tree and Biewer, the failure of Green Tree to maintain financial independence, the manner in which Biewer exerted control over Green Tree; the lack of financial independence of the parties; the fact that the parties shared the same buildings, employees, executives, organization,

contracts, customers, suppliers, advertising, and software; the purpose of operating as the alter egos of each other; and disgorgement of profits from Green Tree to Biewer. (ECF No. 70 at 13).

The Court holds that, at this stage of the litigation, Plaintiff has satisfied the heightened pleading standard for stating claims for fraud, under the MMPA, and for alter ego liability in his Amended Complaint[3]. Plaintiff has alleged the who, what, when, and where regarding when the fraudulent allegedly occurred. Likewise, Plaintiff has alleged sufficient facts to support a finding of control to support a claim for alter ego or successor liability against Biewer. Therefore, the Court will deny the motion to dismiss for failure to allege claims under the heightened pleading standards.

### B. Biewer Lumber, LLC

In addition to the two arguments raised previously by Green Tree, Biewer Lumber also seeks a dismissal based on lack of personal jurisdiction and dismissal for failure to state a claim based on a contended lack of contractual link between Stolzenburg and Biewer.

#### 1. Personal Jurisdiction

"To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing that personal jurisdiction exists, which is accomplished by pleading sufficient facts 'to support a reasonable inference that the defendant[ ] can be subjected to jurisdiction within the state.'" *K-V Pharm. Co. v. J. Uriach & CIA, S.A.*, 648 F.3d 588, 591-92 (8th Cir. 2011) (quoting *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1072 (8th Cir. 2004)). "Although the evidentiary showing required at the prima facie stage is minimal, the showing must be tested, not by the pleadings alone, but by the affidavits and exhibits supporting or

---

[3] As discussed in the next section, The Court will allow the filing of Plaintiff's Amended Complaint.

opposing the motion." *Id.* (internal citations, quotation marks and quoted cases omitted). The evidence must be viewed in the light most favorable to the plaintiff and all factual conflicts are resolved in its favor in deciding whether the plaintiff made the requisite showing. *Id.* (cited case omitted). The burden of proof does not shift to the party challenging jurisdiction, however. *Fastpath, Inc. v. Arbela Techs. Corp.*, 760 F.3d 816, 820 (8th Cir. 2014).

"The basis for exercising personal jurisdiction over a non-resident party in Missouri is Missouri's long-arm statute." *Myers v. Casino Queen, Inc.*, 689 F.3d 904, 910 (8th Cir. 2012). "Missouri's long-arm statute authorizes personal jurisdiction over defendants who, inter alia, transact business, make a contract, or commit a tort within the state." *Viasystems, Inc. v. EBM–Papst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 593 (8th Cir. 2011) (citing Mo. Rev. Stat. § 506.500.1 (2000)). "In adopting the long-arm statute, the Missouri legislature 'intended to provide for jurisdiction, within the specific categories enumerated in the statutes [*e.g.*, transacting business or making a contract within the state,] to the full extent permitted by the due process clause.'" *K-V Pharm.* 648 F.3d at 592 (brackets in original) (quoting *State ex rel. Metal Serv. Ctr. of Ga., Inc. v. Gaertner*, 677 S.W.2d 325, 327 (Mo. 1984) (en banc)). In all instances, the long-arm statute requires that the cause of action arise from the doing of the enumerated act. Mo. Rev. Stat. § 506.500.3 ("Only causes of action arising from acts enumerated in this section may be asserted against a defendant in an action in which jurisdiction over him is based upon this section.").

Biewer contends that Plaintiff did not allege facts sufficient to establish that Biewer is subject to specific personal jurisdiction or general personal jurisdiction. Biewer claims that it is not subject to general jurisdiction in Missouri because its contacts with Missouri are not continuous and systematic so as to render it essentially at home in Missouri. (ECF No. 55 at 8).

Biewer claims that Supreme Court and Eighth Circuit precedent foreclose personal jurisdiction here. *See* ECF No. 55 at 8-10 (citing *Daimler AG v. Bauman*, 134 S. Ct. 746 (2014); *Sheely v. Gear/tronics Indus. Inc.*, No. 1:15-CV-00048 SNLJ, 2015 WL 4958083 (E.D. Mo. Aug. 19, 2015); *Johnson v. Gawker Media, LLC*, No. 4:15-CV-1137 CAS, 2016 WL 193390 (E.D. Mo. Jan. 15, 2016). Biewer notes that it is organized in Michigan and has its principal place of business in Michigan. Biewer notes that it did not begin operations until 2006. Biewer contends that the complaint alleges no facts that establish this is "an exceptional case" that would make Biewer "at home" and subject to general jurisdiction in Missouri. (ECF No. 55 at 10-11). Biewer has provided affidavits to establish that it has never manufactured the product at issue in this case and that Biewer's sales in Missouri of other products and materials are less than one percent of Biewer's total sales. (ECF No. 55 at 11). As a result, Biewer contends that this Court cannot have general jurisdiction over it.

Likewise, Biewer claims that this Court lacks specific jurisdiction over it under Missouri's long arm statute, Mo. Rev. Stat. §506.500. "Specific jurisdiction is proper 'only if the injury giving rise to the lawsuit occurred within or had some connection to the forum state, meaning that the defendant purposely directed its activities at the forum state and the claim arose out of or relates to those activities.'" *Johnson v. Gawker Media, LLC*, No. 4:15-CV-1137 CAS, 2016 WL 193390, at *4 (E.D. Mo. Jan. 15, 2016) (quoting *Steinbuch v. Cutler*, 518 F.3d 580, 586 (8th Cir. 2008)). In the Complaint, Plaintiff purports to assert specific jurisdiction because the claims "arose in this District." (Complaint, ¶8). Contrary to this boilerplate language, Biewer claims that Plaintiff has alleged no facts to form a basis for exercising specific jurisdiction.

Further, Defendants maintain that Plaintiff has not alleged any facts to support his claim of alter ego or successor liability. Defendants note that this case has been going on since 2014 and that the Court gave the parties wide latitude in conducting jurisdictional discovery. (ECF No. 74 at 10). Nevertheless, Plaintiff has filed no affidavits, depositions or other extrinsic evidence to support his argument that Biewer, a foreign corporation, should be subject to this Court's jurisdiction. Defendants assert that, based upon Eight Circuit precedent, Plaintiff cannot rely on his mere pleadings at this stage of the case and discovery. *See* ECF No. 74 at 10 (citing *Radaszewski*, 981 F.2d at 310 ("While the facts adduced in a Rule 12(b)(2) Motion to Dismiss for lack of personal jurisdiction must be viewed in the light most favorable to the party opposing the motion, there must nonetheless be some evidence upon which a prima facie showing of jurisdiction may be found to exist, thereby casting the burden upon the moving party to demonstrate a lack of personal jurisdiction."). Thus, the Court must apply "the same standard as the one [the Court applies] on motions for summary judgment under Rule 56." *Radaszewski*, 981 F.2d at 310. Thus, Defendants argue that Plaintiff has not alleged any facts to support a finding of alter ego liability or successor liability. (ECF No. 74 at 10-11).[4]

In response, Plaintiff asserts that it has jurisdiction over Biewer based upon the acts of its alter-ego Green Tree. (ECF No. 70 at 14). Defendants acknowledge that Green Tree is out of business. (ECF No. 74 at 7). Plaintiff has alleged the following facts with respect to the relationship between Green Tree and Biewer:

- "At all times pertinent to this action Green Tree and Biewer were and are the alter egos of each other and in essence constitute one legal entity in which Green Tree operates as a division of Biewer. The separate incorporation of Green Tree is a sham in that it is

---

[4] Defendants also note that Michigan law requires "a promise to pay the debts or obligations of another person is void under the statute of frauds unless it is in writing[.]" *City of Ecorse v. Salisbury*, No. 299155, 2011 WL 5866984, at *3 (Mich. Ct. App. Nov. 22, 2011).

merely a corporate veil which insulates Biewer from liability for its products, namely Monarch Decking, sold and manufactured by Green Tree. Biewer exerted, and currently exists, extreme influence, complete dominion and/or absolute control over corporate activity and function of Green Tree. Biewer's continued operation of Green Tree as a separate entity is a subterfuge designed to defeat public convenience and understanding, justify a wrong, perpetrate a fraud and/or otherwise work an injustice on Plaintiff, Class Members, and the general public. The conduct of Biewer and/or Green Tree has harmed or will harm Plaintiff, Class Members and the general public, justifying piercing of the corporate veil and holding Biewer liable for the acts and omissions of Green Tree as they are in reality one entity." (Complaint, ¶19).
- "Biewer and Green Tree are so intertwined contractually for the liabilities, past, present and future, of each other that they are one entity. Therefore, the corporate veils of each company should be pierced to properly ascertain the responsible parties for the allegations contained herein." (Complaint, ¶20).
- "Biewer and/or Green Tree expressly and impliedly agreed to assume certain debts and responsibilities, including the product liability of Green Tree by virtue of handling of warranty claims of Green Tree and [sic] well as their continuing relationship." (Complaint, ¶21).

However, upon this Court's review of Plaintiff's proposed Amended Complaint (ECF No. 57-1), the Court notes that Plaintiff included several facts to support his alter ego and successor liability claims. In particular, Plaintiff alleged that Defendants frequently used the names Green Tree and Biewer interchangeably. (ECF No. 57-1 at ¶¶40, 41). Similarly, Green Tree was underfunded and unable to satisfy the warranty claims for the Monarch Products sold. (ECF No. 57-1 at ¶42). Both Green Tree and Biewer were controlled by Brian and Tim Biewer. (ECF No. 57-1, ¶45). Finally, Plaintiff alleges that Biewer expressly and impliedly agreed to assume the product liability of Green Tree by virtue of handling the warranty claims of Green Tree, as well as continuing Green Tree's relationship, representations to customers, and retention of Green Tree's sales proceeds. (ECF No. 57-1, ¶47). The Court holds that these factual allegations must be considered by the Court and, therefore, vacates its prior order denying Plaintiff's Motion for Leave to File an Amended Complaint.

Based upon the factual allegations included in the Amended Complaint, Plaintiff alleges claims for alter ego and/or successor liability against Biewer. *See Radaszewski*, 981 F.2d at 306 ("someone injured by the conduct of a corporation or one of its employees can look only to the assets of the employee or of the employer corporation for recovery"). The Court can obtain personal jurisdiction of the other party based upon the in-state actions of the alter-ego if the Court pierces the corporate veil of that party. *Radaszewski*, 981 F.2d at 306-07 (citing *Collet v. American National Stores, Inc.*, 708 S.W.2d 273 (Mo. Ct. App. 1986)).

The Court holds that Plaintiff sufficiently alleges the control necessary to state a cause of action for piercing the corporate veil and/or successor liability against Biewer. Biewer, although not legally formed at the time of the sale of Plaintiff's decking, clearly existed through Brian and Tim Biewer. Further, Plaintiff has referenced evidence of common control of Green Tree and Biewer. Likewise, Plaintiff has presented evidence that Biewer assumed the liabilities of Green Tree, including evidence that Biewer handled the warranty claims of Green Tree. Therefore, the Court denies Plaintiff's motion to dismiss Biewer for lack of personal jurisdiction.

### 2. Contractual Link

Biewer argues that Plaintiff's warranty claims against Biewer should be dismissed because Biewer was not formally organized under Michigan law until after Plaintiff's purchase. Biewer notes that Plaintiff did not purchase the Monarch Decking from Biewer and Biewer did not manufacture the Monarch Decking at issue. Most importantly, Biewer states that it never issued any warranty to Plaintiff related to the Monarch Decking. Biewer claims that the allegations in the Complaint are impossible because Biewer was not organized when the product was manufactured at the time that the warranty was issued to Plaintiff or at the time Plaintiff purchased the product. (ECF No. 55 at 15). Biewer contends that the terms of the warranty

clearly state that it is between Green Tree and Plaintiff. (ECF No. 55 at 15-16). Further, Biewer maintains that Plaintiff's MMPA claim cannot stand against Biewer because Biewer was not an original party to the transaction. (ECF No. 55 at 15-16 (citing *Reitz v. Nationstar Mortgage, LLC*, 954 F. Supp. 2d 870, 894 (E.D. Mo. 2013) ("Missouri law holds that a MMPA claim may not be brought against a third-party that was not part of the original transaction.")).

Responding to this argument, Plaintiff maintains that Biewer is the alter ego of Green Tree and also acted as a successor to Green Tree. (ECF No. 70 at 17). Plaintiff refers generally to the Court to the allegations in its proposed amended complaint.

As previously noted, the Court has found that Plaintiff sufficiently pleaded alter ego liability and/or successor liability in his Amended Complaint. As a result, the Court holds that Plaintiff states a claim against Biewer based upon his subsequent liability for Green Tree's contractual obligations. Further, at this stage of the litigation, the Court also denies the motion to dismiss Plaintiff's MMPA claim. The *Reitz* case, cited by Defendants, did not involve alter ego or successor liability. Due to the close relationship between alter ego and successor businesses, the Court notes that Biewer likely would not be considered a "third-party" under Missouri law. The Court denies Biewer's motion to dismiss on this basis.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Green Composites, L.L.C.'s Motion to Dismiss Pursuant to F.R.C.P. 12(B)(6) (ECF No. 52) and Defendant Biewer Lumber, LLC's Motion to Dismiss Pursuant to F.R.C.P. 12(B)(2) and 12(B)(6) (ECF No. 54) are **GRANTED**, in part, and **DENIED**, in part. The Court **DISMISSES** Plaintiff's claims for implied warranty of merchantability.

**IT IS FURTHER ORDERED** that the Court **VACATES** its May 23, 2016 Order denying Plaintiff's Motion for Leave to File an Amended Pleading and Joint Additional Parties (ECF No. 57). The Court **GRANTS** Plaintiff leave to file an Amended Complaint. The Clerk of the Court is directed to file Plaintiff's Amended Complaint.

**IT IS FINALLY ORDERED** that the parties shall submit a Joint Scheduling Plan to the Court within fourteen (14) days of the date of this Order.

Dated this 28th day of June, 2016.

*Ronnie L. White*
RONNIE L. WHITE
UNITED STATES DISTRICT JUDGE